1
2
3
4
5

**BLUMENTHAL NORDREHAUG BHOWMIK DE BLOUW LLP**
  Norman B. Blumenthal (State Bar #068687)
  Kyle R. Nordrehaug (State Bar #205975)
  Aparajit Bhowmik (State Bar #248066)
  Piya Mukherjee (State Bar #274217)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232

6

Attorneys for Plaintiffs

7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  RICKEY HENRY, individually, and | **CASE No. 2:16-CV-00280-JAM-EFB** |
| 15  on behalf of himself and on behalf of all persons similarly situated, | |
| | (Class Action) |
| 16  Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION** |
| 17  vs. | |
| 18  CENTRAL FREIGHT LINES, INC., | Hearing Date: November 2, 2021 |
| 19  a Corporation, and DOES 1 through 50, Inclusive, | Time:         1:30 p.m. |
| 20 | Courtroom:    6 |
| | Judge:        Hon. John A. Mendez |
| 21  Defendants. | |

22
23
24
25
26
27
28

---

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    1.  Defendant Central Freight Lines, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    2.  Defendant Required the Class Members to Sign the Same Independent
        Contractor Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    3.  Defendant Paid Piece Rate Compensation to the Class Members, and
        Uniformly Failed to Provide Hourly Pay . . . . . . . . . . . . . . . . . . . . . . . . . 5

    4.  The Job Duties of the Class Members Were All the Same . . . . . . . . . . . . 5

        A.   The Class Members' Job Was to Transport CFL's Freight
            Between Terminals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.   The Defendant Trained the Class Members . . . . . . . . . . . . . . . . . . . . 6

        C.   The Defendant Controlled Class Members' Job Performance . . . . . . . 6

    5.  Defendant Required All Class Members to Pay Costs of Fuel . . . . . . . . . . 6

    6.  The Wage Statements Suffered From the Same Deficiencies . . . . . . . . . . . 7

    7.  The Class Members' Trucks  All Bore the Defendant's Insignia . . . . . . . . 7

III.   CLASS CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    1.  Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    2.  Law Applicable to Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.   The "UCL ABC Class" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.   The "UCL Cal. Lab. Code" and "Labor Code" Sub-Classes . . . . . . . . 9

    3.  Ascertainability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    4.  Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.   Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.   Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.   Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.   Adequacy of Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF CONTENTS
*(Cont'd)*

**PAGE**

    5. Rule 23(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.  Predominance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          i.  The ABC Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          ii.  The *Borello* Test. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

              a.  Right to Control . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

              b.  Secondary Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

         iii.  Minimum Wage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

         iv.  Expense Reimbursement. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

         v.  Wage Statement and Waiting Time Violations . . . . . . . . . . . . . . . 14

      B.  Superiority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

# TABLE OF AUTHORITIES

**PAGE(S)**

2

## CASES

3

4

*Abdullah v. U.S. Sec. Assocs.*,
　　731 F.3d 952, 964 (9th Cir. Cal. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5

*Ayala v. Antelope Valley Newspapers, Inc.*,
　　59 Cal.4th 522, 532 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 13

6

*Berger v. Home Depot USA, Inc.*,
　　741 F.3d 1061, 1067 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7

*Dynamex Operations West, Inc. v. Superior Court*,
　　4 Cal.5th 903 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 8

8

9

*Ellis v. Costco Wholesale Corp.*,
　　657 F.3d 970, 985 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

10

*Hanlon v. Dataproducts Corp.*,
　　976 F.2d 497, 508 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 14

11

12

*Johnson v. Serenity Transp.*, Inc.,
　　No. 15-cv-02004-JSC, 2018 U.S. Dist. LEXIS 129241
　　at \*32-33 (N.D. Cal. Aug. 1, 2018) . . . . . . . . . . . . . . . . . . . . . . 2, 3, 10-12, 14

13

14

*Keegan v. Am. Honda Motor Co*,
　　284 F.R.D. 504 (C.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15

*Leyva v. Medline Industries Inc.*,
　　716 F.3d 510, 513-14 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

16

17

*Martinez v. Knight Transp., Inc.*,
　　2018 U.S. Dist. LEXIS 204462, at \*30 (E.D. Cal. Nov. 30, 2018) . . . . . . . . . 14

18

*Mazza v. Am. Honda Motor Co.*,
　　666 F.3d 581, 588-89 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

19

20

*Mendez v. R+L Carriers, Inc.*,
　　2012 U.S. Dist. LEXIS 165221, \*48-\*49 (N.D. Cal. Nov. 19, 2012) . . . . . 10, 14

21

*Moreno v. JCT Logistics, Inc.*,
　　2019 U.S. Dist. LEXIS 117342, at \*32 (C.D. Cal. May 29, 2019) . . . . . . . . 1, 12

22

23

*Perez v. Safety-Kleen Systems, Inc.*,
　　253 F.R.D. 508, 520 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

24

*Ridgeway v. Wal-Mart Stores Inc.*,
　　2014 U.S. Dist. LEXIS 126806, \*31-\*33 (N.D. Cal. Sept. 10, 2014) . . . . 10, 14

25

26

*S.G. Borello* & Sons, Inc. v. Department of Industrial Relations
　　(1989) 48 Cal. 3d 342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 9, 12, 13

27

28

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES** (*cont'd*)

*Schwartz v. Upper Deck Co.*,
183 F.R.D. 672, 679-80 (S.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Taylor v. FedEx Freight, Inc.*,
2015 WL 2358248, at *11 (E.D. Cal. May 15, 2015) . . . . . . . . . . . . . . . . . 10, 14

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
923 F.3d 575 (9th. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Villalpando v. Exel Direct Inc.*, 303 F.R.D.
588, *608 (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10

*Wolin v. Jaguar Land Rover North Am., LLC*,
617 F.3d 1168, 1175 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**STATUTES**

California Labor Code

§ 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§ 226.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

§ 1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 1197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 1197.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 2802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

**REGULATIONS**

California Code of Regulations., Title 8, § 11090 . . . . . . . . . . . . . . . . . . . . . . . . . 8

## TABLE OF AUTHORITIES
### *(cont'd)*

PAGE(S)

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rule 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rule 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rule 23(b)(1-3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 11, 15

## I.     INTRODUCTION

Plaintiff RICKEY HENRY ("Plaintiff") respectfully moves for certification of a class defined as "all individuals who are or previously worked for Defendant Central Freight Lines, Inc. ("Defendant") as truck drivers who were classified by Defendant as independent contractors and who were residents of California during the period from October 20, 2011 to the present ('Class Period')" consisting of at least 72 workers.

Plaintiff's predominant common claim is based on the same fact that Defendant misclassified all the Class Members as independent contractors.   Based on the misclassification, Defendant violated the Unfair Competition Law (the "UCL") by failing to comply with several provisions of the California Industrial Welfare Commission Wage Order No. 9.  (First Amended Complaint, ("FAC"), [Doc. No. 1-6] at ¶¶ 34, 47, 58 .)

Plaintiff first seeks class certification under the UCL for restitution for violation of Wage Order 9, §§ 4, 7(A)(3), 8, and 9(B) defined as a "UCL ABC Class."

This Court held that the ABC test applies to determining "whether workers should be classified as employees or as independent contractors for purposes of California wage orders."  MSJ Order, pg. 17, *quoting  Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903 (2018). The ruling also held, "this Court follows the reasoning and holding of *Vazquez* and thus applies the ABC test discussed in *Dynamex* to Henry's claims brought under California wage orders."  All the claims outlined above are brought under those specific provisions of the wage orders as quoted from Wage Order 4-2001 above.

The relief sought for the Wage Order violations under the UCL is restitution for unpaid wages and out of pocket expenses lost by the Class Members by the violations of the Wage Orders for all those payments they were unlawfully forced to make in order to perform their job for Defendant.  *See e.g. Moreno v. JCT Logistics, Inc.*, 2019 U.S. Dist. LEXIS 117342, at *32 (C.D. Cal. May 29, 2019) ("the IWC's definitions of "employ," as developed in *Martinez* and *Dynamex*, apply to the meal break claim, rest break claim, minimum wage claim, *and the UCL claims* based on the foregoing.")

1    As a matter of uniform policy and practice, Defendant required all the Class
2  Members to sign an Independent Contractor Agreement (an "ICA") setting forth the costs
3  and expenses Defendant would deduct from their weekly pay ("charge-backs"). Under the
4  uniform ICA signed by every Class Member, they were all required to furnish their own
5  trucks, pay for their own insurance, pay for fuel, and use a global positioning device
6  ("GPS") to transport Defendant's cargo. Additionally, the Class Members were also, as
7  a matter of uniform policy and practice, paid a predetermined per-mile piece-rate wage
8  only for driving tasks. As a result, Defendant failed to pay any wages for all of the non-
9  driving tasks the Class Members performed such as pre- and post-shift inspections.

10    Under the ABC test, unless Defendant establishes: "(A) that the worker is free from
11  the control and direction of the hiring entity in connection with the performance of the
12  work, both under the contract for the performance of the work and in fact, (B) that the
13  worker performs work that is outside the usual course of the hiring entity's business, and
14  (C) that the worker is customarily engaged in an independently established trade,
15  occupation, or business, of the same nature as the work performed by the hiring entity,"
16  the worker should be classified as an employee. *Dynamex*, 4 Cal.5th at 916-7.

17    Following *Dynamex*, courts have held that common questions predominate under
18  this test where, as here, an employer has exercised uniform control over the manner and
19  means of a driver's work. *Johnson v. Serenity Transp.*, Inc., No. 15-cv-02004-JSC, 2018
20  U.S. Dist. LEXIS 129241, at *32-33 (N.D. Cal. Aug. 1, 2018).

21    Because drivers perform the same work, the question of whether drivers are
22  customarily engaged in an independently established trade, occupation, or business can
23  also be resolved on a class-wide basis. *Id*. In sum, common questions predominate the
24  misclassification issue under the applicable ABC test.

25    Indeed, this Court has already held in briefing related to the cross-motions for
26  summary judgment that "**Henry has compelling arguments that his employment by**
27  **CFL fails Prong B of the ABC test, making Henry an employee**." (MSJ Order, [Doc.
28  No. 87] at pg. 18)(emphasis added)).

---

1    The second class Plaintiff moves to certify is a four (4) year "UCL Cal. Lab. Code
2    Class" asserting "that Defendant violated the UCL by failing to comply with the
3    provisions of the California Labor Code ("Cal. Lab. Code") under § 226.2 requiring
4    minimum wages to be paid for non-productive time; and, § 2802 requiring reimbursement
5    of necessary business expenditures.

6    The third class Plaintiff also moves to certify is a "California Labor Code Subclass"
7    for a three (3) year Sub-Class for the Second Cause of Action that Defendant failed to pay
8    minimum wages for non-productive time under Cal. Lab. Code §§ 1194, 1197, and
9    1197.1; a one (1) year Sub-Class for the Third Cause of Action that Defendant provided
10   noncompliant wage statements omitting the total hours worked; a three (3) year Sub-class
11   for the Fourth Cause of Action that Defendant failed to provide wages when due in
12   violation of Cal. Lab. Code §§ 201-203 by failing to pay the minimum wages due for non-
13   productive time; and, a three (3) year Subclass under the Fifth cause of action for failure
14   to provide reimbursement in violation of Cal. Lab. Code § 2802.

15   For these classes, consistent with this Court's ruling on the motions for summary
16   judgment, Plaintiff is seeking to certify the predominant common question of whether
17   Defendant violated the California Labor Code by unlawfully misclassifying the Class
18   Members as independent contractors under the *Borello* test for purposes of the Labor
19   Code violations. As held by the Supreme Court of California, all the questions raised
20   under *Borello* raise a predominant common question because "the misclassification of
21   common law employees as independent contractors generally does not depend upon
22   deciding the actual scope of a hirer's right of control over its hirees." *Ayala v. Antelope*
23   *Valley Newspapers, Inc.*, 59 Cal.4th 522, 532 (2014). Instead, "[t]he relevant question is
24   whether the scope of the right of control, whatever it might be, is susceptible to classwide
25   proof." *Id.* Accordingly, there can be no doubt that these claims brought under the
26   California Labor Code all present predominant common questions requiring class
27   certification. *Johnson, Inc.*, 2018 U.S. Dist. LEXIS 129241 at *26-32; *Villalpando v.*
28   *Exel Direct Inc.*, 303 F.R.D. 588, *608 (N.D. Cal. 2014).

All of Plaintiff's claims brought here under either the ABC or *Borello* test are best resolved in a class action. Plaintiff seeks certification based on an admitted, uniform company-wide written policy that Plaintiff will prove results in the misapplication of the independent contractor designation to all of the Class Members. Certification is, therefore, warranted as "Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Abdullah v. U.S. Sec. Assocs*., 731 F.3d 952, 964 (9th Cir. Cal. 2013).  As such, class treatment is the superior way to determine the liability that Plaintiff alleges. Every other class certification element is amply met as well: numerosity, typicality, commonality and adequacy of representation. Accordingly, Plaintiff respectfully submits that the motion for class certification should be granted.

## II.    FACTUAL BACKGROUND

### 1.  Defendant Central Freight Lines, Inc.

The core of Defendant's business is to pick up freight and deliver freight to Defendant's customers.  (Fite 30(b)(6) Depo. at 11:24-19, Exh. 1; Weeks 30(b)(6) Depo. at 18:9-13, Exh. 2)[1]

Defendant employs employees who pick up freight directly from customers' locations and then bring the freight to one of these six (6) terminals.  *Id*. at 12:20-13:9. Notably, Defendant's employees pick up and deliver freight from a customer's location to a terminal, while the Class Members transfer the same freight from one terminal to another terminal.  (Weeks 30(b)(6) Depo. at 18:20-23, Exh. 2).

### 2.    Defendant Required the Class Members to Sign the Same Independent Contractor Agreements

Plaintiff worked as a truck driver for Defendant (Declaration of Tom Weeks, ¶ 3, [Doc. No. 22-2]) and had entered into an Independent Contractor Agreement ("ICA")

---

[1]    All exhibits attached to the Declaration of Aparajit Bhowmik filed herewith.

with Defendant. (*Id.*; *see also* ICA, <u>Exh. 3</u>). "Like Plaintiff, each one of the independent owner-operators entered into the same ICA as he did." (Weeks Decl., ¶ 4, [Doc. No. 22-2]; Weeks 30(b)(6) Depo. at 20:9-24:9, <u>Exh. 2</u> ("**they all signed [ICAs] that are substantially the same**; yes."); Sandoval Decl., ¶2; Shipp Decl., ¶2).

**3.     Defendant Paid Piece Rate Compensation to the Class Members, and Uniformly Failed to Provide Hourly Pay**

Pursuant to the ICA, Defendant always paid the Class Members compensation by piece rate pay with no hourly pay. (Fite Depo., 50:1-8, <u>Exh. 1</u>) The ICA sets forth the terms of compensation in Appendix A (Weeks 30(b)(6) Depo., 39:3-21; ICA at Appendix A, <u>Exh. 3</u>) and provides for a per mile piece rate compensation between $0.89 to $0.95 per mile, extra stop pay of $50 for extra stops not including initial pickup or delivery, reimbursement for tolls, fuel surcharges, and a "spot" rate for occasional extra services. (*Id.*). The piece rate pay was not based on actual miles driven, but on Defendant's pre-established "Mileage Guide" that set forth Defendant's opinion of the number of miles and amount of pay. (Weeks Depo., <u>Exh. 2</u> at 72:14-24).

Defendant uniformly did not, however, provide hourly pay for non-productive work of performing pre- and post-shift inspections. (Fite Depo., 51:3-15, <u>Exh. 1</u>; Weeks Depo., 48:24-49:11, <u>Exh. 2</u> ("**There's no hourly pay**.")).

**4.     The Job Duties of the Class Members Were All the Same**

**A.     The Class Members' Job Was to Transport CFL's Freight Between Terminals**

The Class Members all drove trucks with loads on them consisting of the freight of the customers of Defendant between terminals. (Fite Depo., 138: 14-17, <u>Exh. 1</u>). The Class Members took the load pursuant to a "Service Standard" established between Defendant and Defendant's customer that sets an expectation for when the load is to arrive at the destination. (Weeks Depo., 74:8-75:24, <u>Exh. 2</u>). The Class Members were required to make vehicle inspections before, during, and after the operation of the vehicle. (*Id*. 146:17-25, <u>Exh. 2</u>; Performance Guide, pg. 23, <u>Exh. 4</u>). Defendant also tracked the progress of all Class Members by recording whether the driver was moving with their

1   speed and miles driven. (Weeks 30b6 Depo., 44:6-45:17, <u>Exh. 2</u>).

2

3           **B.**    **The Defendant Trained the Class Members**

4       Defendant provided all Class Members with an orientation to familiarize them with

5   Defendant's policies and procedures. (Weeks 30(b)(6) Depo., 110:7-112:9, <u>Exh. 2</u>).  The

6   Class Members were all provided with the same 54 page "The Central Freight Lines, Inc.

7   Professional Driver Performance Guide."  (*Id*.; *see also* Performance Guide, <u>Exh. 4</u>).

8   **Defendant characterized the guide as a "Safety Document" that is provided both to**

9   **the independent contractor Class Members *and* drivers whom Defendant classified**

10  **as employees**.  (Weeks 30(b)(6) Depo., 110:7-112:9, 116:1-15, <u>Exh. 2</u>).

11          **C.**    **The Defendant Controlled Class Members' Job Performance**

12      All the Class Members were required to complete and sign the same "Central

13  Freight Lines, Inc. Contract Driver Qualification Checklist." (Weeks Depo., 106:1-108:2,

14  <u>Exh. 2</u>; Checklist, <u>Exh. 5</u>).  The categories were comprehensive and required the Class

15  Member to attest the "training information has been fully explained and that this training

16  was conducted in compliance with company requirements and expectations." (Checklist,

17  <u>Exh. 5</u>).  Defendant uniformly put Defendant's employee truck drivers through the same

18  process. Once hired, none of the Class Members could drive with any passenger that

19  Defendant did not approve or authorize in writing.  (Weeks Depo., 145:4-12, <u>Exh. 2</u>).

20      **5.**    **Defendant Required All Class Members to Pay Costs of Fuel**

21      The Class Members all assumed all the "costs of operation" of their trucks working

22  for Defendant, including costs related to leases and fuel.  (Militzer Decl., ¶ 5, [Doc. No.

23  28-1]; Fite Depo., 71:4-11, <u>Exh. 1</u>). Defendant sent the same form "settlement" statements

24  weekly to pay the Class Members by deducting costs Defendant incurred on the Class

25  Members' behalf from the amount Defendant paid Class Members for miles driven.

26  (Militzer Decl., ¶ 6, [Doc. No. 28-1]). These deductions included $18.67 per month for

27  GPS Defendant used to track the location of all Class Members (Fite 30(b)(6) Depo.,

28  40:15-22, 80:23-81:18, <u>Exh. 1</u>); fuel, lease payments, an escrow account, and insurance.

### 6. **The Wage Statements Suffered From the Same Deficiencies**

Defendant provided statements itemizing compensation paid to the Class Members uniformly formatted the same way without any statement of hours worked.  (Fite 30(b)(6) Depo., Exh. 1 at 106:6-18; Statement Exemplar Exh. 6).

### 7. **The Class Members' Trucks  All Bore the Defendant's Insignia**

The trailers driven by the Class members were owned by Defendant and all had Defendant's logo on them.  (Fite 30(b)(6) Depo., 145:20-24, Exh. 1; ICA ¶ 13, Exh. 3; Garcia Decl., ¶5; Cartagena Decl., ¶4; Waldman Decl.,¶4).

## III.  CLASS CERTIFICATION

### 1.  **Legal Standard**

Federal Rule of Civil Procedure 23 governs class actions. A party  seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992).

After satisfying the prerequisites, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the defendant has treated the members of the class as a class, making  appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. FRCP 23(b)(1-3).

### 2.  **Law Applicable to Claims**

#### A.  **The "UCL ABC Class"**

Plaintiff moves to certify the following class pursuant to Rules 23(a) and 23(b)(3): "all individuals who are or previously worked for Defendant Central Freight Lines, Inc. ("Defendant") as truck drivers who were classified by Defendant as independent

1  contractors and who were residents of California from October 20, 2011 to the present
2  ("Class Period")." This Court confirmed that the ABC test applies retroactively and, as
3  a result, "applies the ABC test discussed in *Dynamex* to Henry's claims brought under
4  California wage orders." (MSJ Order, at pgs. 14-15, [Doc. No. 87]).  Then on November
5  12, 2019, this Court granted Defendant's Motion to Stay the Action, ECF No. 105, until
6  the California Supreme Court answered the Ninth Circuit's certified question in the case
7  of *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 923 F.3d 575 (9th. Cir. 2019), where the
8  Ninth Circuit withdrew its prior ruling and certified to the California Supreme Court the
9  question of whether the "ABC Test" announced in *Dynamex Ops. W. Inc. v. Superior*
10 *Court*, 4 Cal.5th 903 (2018) applies retroactively.

11     The California Supreme Court has now answered this question in *Vazquez v.*
12 *Jan-Pro Franchising Internat.*, 10 Cal. 5th 944, 958 (2021) and held that "*Dynamex*
13 applies retroactively to all nonfinal cases that predate the effective date of the *Dynamex*
14 decision." *Id*. The Ninth Circuit has also issued a ruling in *Vazquez* based on the guidance
15 received from the California Supreme Court in *Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
16 986 F.3d 1106 (9th Cir. 2021).

17     Accordingly, the provisions of the California wage orders applicable to this case
18 for which the ABC test must be applied are whether:

19     (1)   Defendant violated Section 4 of the Wage Order requiring minimum
20           wage for all hours worked by failing to provide hourly pay for pre and
             post-shift inspections;

21     (2)   Defendant violated Section 7 of the Wage Order by failing to
22           maintain accurate records of the start and stop times of shifts;

23     (3)   Defendant violated Section 8 of the Wage Order stating that "[n]o
             employer shall make any deduction from the wage or require any
24           reimbursement from an employee ...."

25     (4)   Defendant violated Section 9 of the Wage Order which provides as
             follows: "When tools or equipment are required by the employer or
26           are necessary to the performance of a job, such tools and equipment
             shall be provided and maintained by the employer...."

27 (Cal. Code Regs., tit. 8, § 11090).

28     This Court's prior ruling to the undisputed facts of this case stated:

PLAINTIFF'S MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION

8      Case No. 2:16-CV-00280-JAM-EFB

**Henry has compelling arguments that his employment by CFL fails Prong B of the ABC test, making Henry an employee**.

(MSJ Order, pgs. 18-19, [Doc. No. 87]).

### B.   The "UCL Cal. Lab. Code" and "Labor Code" Sub-Classes

Plaintiff also moves to certify a "UCL Cal. Lab. Code Class" for Plaintiff's first UCL cause of action asserting "that Defendant violated the UCL by failing to comply with the provisions of the California Labor Code ("Cal. Lab. Code") under § 226.2 requiring minimum wages to be paid for non-productive time; and, § 2802 requiring reimbursement of necessary business expenditures. Additionally, Plaintiff moves the Court to certify a California Labor Code Sub-Class for determination under the *Borello* standard for Plaintiff's Second through Fifth Causes of Action.

Under the *Borello* standard, **the most significant factor in this determination is the right of the principal to control the manner and means of accomplishing the result desired**. *Borello*, 48 Cal. 3d at 349-50

(MSJ Order, ps. 19-20, [Doc. No. 87]).

### 3.   Ascertainability

"Courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999). A class is ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member" using objective criteria. *Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504 (C.D. Cal. 2012)

Based on a review of the business records Defendant was ordered to produce (*see* Order, [Doc. No. 68]), Plaintiff has ascertained the identity of everyone who contracted with Defendant to provide truck driving work. (Bhowmik Decl., ¶ 3; Lietzow Decl., Exh. C).

### 4.   Rule 23(a)

### A.   Numerosity

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable. See Fed. R. Civ. P. 23(a)(1). During the class period as of

---

PLAINTIFF'S MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION

9     Case No. 2:16-CV-00280-JAM-EFB

1  2018, Defendant directly contracted with **72** truck drivers based on the Class List
2  produced pursuant to Court Order as of December 2018. (Lietzow Decl., ¶ 3). Plaintiff,
3  therefore, respectfully submits that numerosity is met.

4  **B.**    **Commonality**

5  "[C]ommonality requires that the class members' claims 'depend on a common
6  contention such that 'determination of its truth or falsity will resolve an issue that is
7  central to the validity of each [claim] in one stroke.'" *Mazza v. Am. Honda Motor Co.*, 666
8  F.3d 581, 588-89 (9th Cir. 2012).

9  Courts have frequently found the commonality requirement satisfied based on the
10  common issue of whether class members were misclassified as independent contractors
11  instead of employees. *Johnson*, 2018 WL 3646540, at *8.

12  Here, Plaintiff satisfies the commonality requirement because whether Defendant
13  misclassified its drivers as independent contractors rather than employees under
14  California law is a common question underlying every cause of action that is capable of
15  common resolution for the class. *Villalpando*, 303 F.R.D. at 606.

16  Further, whether Defendant's uniform policy and practice of including the
17  mandatory pre- and post-trip inspections as part of the piece-rate mileage rate constitutes
18  a class-wide common question. *Ridgeway v. Wal-Mart Stores Inc.*, 2014 U.S. Dist. LEXIS
19  126806, *31-*33 (N.D. Cal. Sept. 10, 2014); *Mendez v. R+L Carriers, Inc.*, 2012 U.S.
20  Dist. LEXIS 165221, *48-*49 (N.D. Cal. Nov. 19, 2012); *Taylor v. FedEx Freight, Inc.*,
21  2015 WL 2358248, at *11 (E.D. Cal. May 15, 2015).

22  Commonality also exists for the reimbursement claims raised by the Wage Order
23  and the California Labor Code because all Class Members were deprived of
24  reimbursement for fuel. *Johnson*, 2018 U.S. Dist. LEXIS 129241, at *24-25.

25  The claim for violation of California's Wage Statement law requiring the listing of
26  hours worked under Labor Code § 226 also satisfies the commonality requirement
27  because Defendant uniformly failed to ever state the hours worked on any documents
28  provided to the class members. *Johnson*, 2018 U.S. Dist.LEXIS 129241 at 45-46.

---

1

### C.   <u>Typicality</u>

2   "The purpose of the typicality requirement is to assure that the interest of the named

3   representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover North*

4   *Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Thus, typicality is satisfied if the

5   plaintiff's claims are "reasonably co-extensive with those of absent class members; they

6   need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

7   Plaintiff's claims are typical of the class because they arise out of Defendant's

8   policy of uniformly treating the class members as independent contractors and having

9   them sign identical ICAs. *Johnson,* 2018 U.S. Dist. 129241 at *19.

10   Accordingly, the typicality requirement is met.

11

### D.   <u>Adequacy of Representation</u>

12   Under Rule 23(a)(4), the adequacy inquiry turns on: (1) whether the named plaintiff

13   and class counsel have any conflicts of interest with other class members and (2) whether

14   the representative plaintiff and class counsel can vigorously prosecute the action on

15   behalf of the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

16   Plaintiff will put the interests of the Class Members before his own interests and commits

17   to participating in the litigation to its resolution. (Henry Decl. ¶¶ 17-21). Plaintiff is an

18   adequate class representative because he has personal experience with the claims of the

19   lawsuit and is familiar with the underlying facts. (*Id*.) Plaintiff's counsel, Blumenthal

20   Nordrehaug Bhowmik De Blouw LLP, has experience in California wage-and-hour class

21   actions suits and has been found to be qualified class counsel in prior actions, including

22   California District Courts. (Bhowmik Decl., ¶¶9-14, <u>Exh. 8</u>). Accordingly, Plaintiff

23   respectfully submits that the class representative and class counsel are adequate.

24

### 5.   <u>Rule 23(b)(3)</u>

25

### A.   <u>Predominance</u>

26   Class certification under Rule 23(b)(3) is proper when common questions can be

27   resolved for all members of the class in a single adjudication. *Hanlon*, 150 F.3d at 1022.

28   The predominance analysis begins with the elements of the underlying causes of action.

1 | *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014).

2 |     Two tests relevant to the analysis of whether the Class Members were properly
3 | classified are: (1) the "ABC" test and the (2) *Borello* test.

### i.  **The ABC Test**

5 |     Common questions predominate this test for the UCL claims brought under the
6 | Wage Order, especially prong B as recognized by this Court's Order on Summary
7 | Judgment.  Defendant exercises uniform control over the manner and means of the
8 | drivers' work. Further, whether Plaintiff provided services within Defendant's usual
9 | course of business is subject to common proof because Defendant defines itself as a
10 | transportation service and all drivers perform the same work: delivery services. There is
11 | no evidence that Defendant provides other services or that drivers are engaged in other
12 | kinds of work. Third, because drivers perform the same work, the question of whether
13 | drivers are customarily engaged in an independently established trade, occupation, or
14 | business can also be resolved on a class-wide basis.

15 |     In sum, common questions predominate the misclassification issue under the ABC
16 | test. *Johnson*, 2018 U.S. Dist. LEXIS 129241, at *33; *Moreno*, 2019 U.S. Dist. LEXIS
17 | 117342, at *47 (C.D. Cal. May 29, 2019) (UCL claim certified because "issues common
18 | to the class predominate the misclassification analysis under the ABC test.").

### ii.  **The *Borello* Test**

20 |     Plaintiff's employment status for purposes of the claims raised by the UCL Cal.
21 | Lab. Code and Cal Sub-class is governed by the multi-factor test set forth in *Borello* that
22 | involves predominant common questions.

### a.  **Right to Control**

24 |     "The relevant question is whether the scope of the right of control, whatever it
25 | might be, is susceptible to classwide proof." *Ayala*, 59 Cal.4th at 537. The question is "not
26 | how much control a hirer exercises, but how much control the hirer retains the *right* to
27 | exercise." *Id.* at 533 (emphasis in original). As the drivers sign essentially the same ICAs,
28 | "the degree of control [the contracts] spell[ ] out is uniform across the class." *Id.* at 534;

*Villalpando*, 303 F.R.D. at 608.

Here, each one of the Class Members entered into the same ICA as the Plaintiff. (Weeks Decl., ¶ 4, [Dkt. No. 22-2]; <u>Exh. 3</u>, Weeks Depo. at 20:9-24:9), providing for control by Defendant over payment, insurance, locations for delivery/pickup, and driving/licensure standards. (ICA, <u>Exh. 4</u>; Weeks Decl. at ¶ 5, [Dkt. No. 22-2] and Appendix B; Weeks Depo., 54:23-57:2, <u>Exh. 2</u>).

These and other common controls will allow the Court to decide the "control" issue on a classwide basis.

### b. Secondary Factors

The secondary *Borello* factors can also be resolved through common proof. First, the right to terminate can be determined on a classwide basis, as the uniform ICA includes termination provisions. Second, they all have the same skill set which is to hold a commercial driver's license. Similarly, common proof is available as to who provided the instrumentalities, tools, and place of work, since drivers were contractually obligated to use certain equipment—such as fuel and GPS systems. Whether drivers are engaged in a distinct occupation or business from Defendant can also be resolved on a class basis because Defendant's entire business is the transportation services that drivers provide under the Defendant's insignia. The method of payment is also a common issue as the drivers were all paid per mile driven. Accordingly, common questions predominate.

### iii. <u>Minimum Wage</u>

Defendant violated minimum wage rules of the Wage Orders and the California Labor Code because drivers are compensated on a piece-rate per delivery basis only. Whether the piece rate pay violated the law that separate, hourly wages must be paid for inspection time raises a predominant common question as Defendant admits all class members were required to do pre and post shift inspections. (Weeks Depo., 146:17-25, <u>Exh. *2*</u>). Plaintiff has already calculated the pre- and post-shift inspection time for which the Class Members are owed minimum wage based on the driving records. (Lietzow Decl., ¶ 11). This analysis is precisely the same kind courts have found that, based on

1  their existence, establish predominance. *Martinez v. Knight Transp., Inc.*, 2018 U.S. Dist.
2  LEXIS 204462, at *30 (E.D. Cal. Nov. 30, 2018); *Taylor*, 2015 WL 2358248, at *11;
3  *Mendez*, 2012 U.S. Dist. LEXIS 165221 at *48-*49.

4  <center>**iv.  <u>Expense Reimbursement</u>**</center>

5  Defendant violated the Wage Order and the Labor Code by the requirement that all
6  fuel expenditures must be reimbursed by an employer. All drivers were denied
7  reimbursement. Plaintiff has ascertained the amount of reimbursement owed to each of
8  the drivers based on miles driven in California after reviewing Defendant's records.
9  (Lietzow Decl., <u>Exh. B</u> and ¶ 12). Whether each of these categories was a necessary
10 expense is subject to common proof. *Johnson*, 2018 U.S. Dist. LEXIS 129241 at *24.

11 <center>**v.  <u>Wage Statement and Waiting Time Violations</u>**</center>

12 Defendant cannot dispute that **hours worked were never included on the**
13 **"settlement statements"** provided to the Class Members. Whether these uniformly
14 deficient statements violated Labor Code Section 226 is a predominant common question.
15 As the court in *Johnson* held, where an employer never provided statements identifying
16 any hours worked, Defendant violated the wage statement law regardless of how many
17 hours any particular driver worked. *Johnson*, 2018 U.S. Dist, LEXIS 129241 at *45-46.

18 The waiting time penalty claims also raise predominant common questions.
19 *Ridgeway*, 2014 U.S. Dist. LEXIS 126806, at *33 (certifying waiting time claim
20 derivative of claim employer's piece rate plan failed to pay for nonproductive work).

21 **B.  Superiority**

22 "Rule 23(b) also requires that class resolution must be 'superior to other available
23 methods for the fair and efficient adjudication of the controversy." *Hanlon*, 150 F.3d at
24 1023. The four factors for the Court's examination are: (1) the interest of each class
25 member in individually controlling the prosecution or defense of separate actions; (2) the
26 extent and nature of any litigation concerning the controversy already commenced by or
27 against the class; (3) the desirability of concentrating the litigation of the claims in the
28 particular forum; and (4) the difficulties likely to be encountered in the management of

1  a class action. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180 (9ᵗʰ Cir. 2001) at 1190-92.

2       The class members do not have sufficient monetary incentive to pursue their own

3  claims in light of the amount of expert expenses and attorneys' fees necessary for the

4  prosecution. The law is also clear that employees may be reluctant to file an individual

5  lawsuit against their employer for fear of retaliation. *See Perez v. Safety-Kleen Systems,*

6  *Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008).

7       Manageability also weighs in favor of superiority. As established, common

8  questions predominate over individual questions. The calculation of each individual's

9  damages is attached and provided with the Declaration of Eric Lietzow and, even in the

10  absence of this report, damages do not prevent certification on the common questions

11  concerning Defendant's liability. The Ninth Circuit has explained, "damages

12  determinations are individual in nearly all wage-and-hour class actions," and "the

13  presence of individualized damages cannot, by itself, defeat class certification under Rule

14  23(b)(3)." *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013).

15       Accordingly, Plaintiff has met the requirements under Rule 23(b)(3).

16

17  **IV.   CONCLUSION**

18       Plaintiff respectfully requests the Court to find that Plaintiff has met the burden of

19  demonstrating the class requirements of Rules 23(a) and 23(b)(3) and grant certification.

20       Respectfully submitted,

21

22  Dated: September 2,2021        **BLUMENTHAL NORDREHAUG**
                                    **BHOWMIK DE BLOUW LLP**

23

24                                 By:    */s/ Aparajit Bhowmik*
25                                         Aparajit Bhowmik
                                           Piya Mukherjee
26                                 Attorneys for Plaintiff

27

28

---